# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 16-CV-3973 (JFB)

---

ANTHONY JACKSON,

Petitioner,

VERSUS

KIRKPATRICK, SUPERINTENDENT,
CLINTON CORRECTIONAL FACILITY

Respondent.

---

**MEMORANDUM AND ORDER**
January 4, 2019

---

JOSEPH F. BIANCO, District Judge:

Anthony Jackson ("Jackson" or "petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State court. (*See* Pet., ECF No. 1; Pet. Aff., ECF No. 1-2)[1] On September 22, 2011, a jury found petitioner guilty of three counts of murder in the second degree, in violation of N.Y. Penal Law § 125.25(3); three counts of robbery in the first degree, in violation of N.Y. Penal Law § 160.15(1), (2), and (4); three counts of burglary in the first degree, in violation of N.Y. Penal Law § 140.30(1), (2), and (4); one count of robbery in the second degree, in violation of N.Y. Penal Law § 160.10(1); one count of burglary in the second degree, in violation of N.Y. Penal Law § 140.25(2); one count of kidnapping in the first degree, in violation of N.Y. Penal Law § 135.25(3); one count of kidnapping in the second degree, in violation of N.Y. Penal Law § 135.20; and two counts of criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(1)(b) and (3). On November 9, 2011, petitioner was sentenced to multiple concurrent terms of imprisonment, the longest of which was twenty years to life.

In the instant habeas action, petitioner challenges his conviction, arguing that: (1) he

---

[1] The Court uses the pagination assigned by the electronic case filing system when citing to the Petition, Petitioner's Affidavit, and its accompanying exhibits (ECF. No. 1 – [1-16]).

1

received ineffective assistance of counsel on multiple grounds; (2) that his rights under the Fourth Amendment were violated; and (3) his rights under the Confrontation Clause were violated. For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied on the merits.

I. BACKGROUND

A. Facts

The following facts are adduced from the underlying record and the instant petition.

On June 15, 2010, at approximately 1:45 a.m., Tristan Theodore ("Theodore") and his friend Brandon James ("James") arrived at 980 South End, Woodmere, New York. (Tr. Testimony of Brandon James ("James T."), ECF No. 7-5, at 515-16.) This location was Theodore's family residence; James was living with Theodore's family at the time. (James T. at 512-13.) Upon arriving home, Theodore and James exited their vehicle and were ambushed by two men armed with handguns. (James T. at 516, 519.) Neither man had their face covered and James was able to view their faces. (James T. at 522.) The two men forced Theodore and James into the house at gunpoint, ordering them to get on the floor removing their personal belongings from their pockets, including their cell phones and sums of currency. (James T. at 516-20.) The assailants then ordered Theodore and James to go to the basement, where one of the assailants struck Theodore in the head with his handgun and the other struck James with his handgun. (James T. at 517-21, 581-84.) In addition, the assailants proceeded to cover Theodore's and James' mouths with duct tape, though the duct tape from James' mouth was removed. (James T. at 517, 520, 523, 535, 583-87, 614-16.) The assailants threatened to kill Theodore's parents if Theodore and James failed to comply with their demands. (Hr. Testimony of Detective James Cereghino ("Cereghino H."), ECF No. 7-1, at 18.) Then, the assailants led Theodore and James out of the basement, took a PlayStation game system from the home, and took Theodore's car keys. (James T. at 517-18.)

The assailants then left the location with Theodore and James, forced them to get into Theodore's car, and one of the assailants began driving the car away from the home. (Cereghino H. at 19, James T. at 524-25, 537, 585, 589-93.) As the car began to move, James decided to attempt escape, jumped out of the car, and ran back to Theodore's home. (James T. at 525.) As he fled from the car, James heard the sound of a gunshot. (James T. at 525.) When James reached Theodore's home, he woke up Theodore's parents and they called 911 for assistance. (James T. at 525-56; Tr. Testimony of Elizabeth Theodore ("E. Theodore T."), ECF No. 7-4, at 371.)[2] Upon later investigation, it was determined that Theodore also tried to escape the car, but was shot as he fled. (Cereghino H. at 19-20.) Theodore was found in the yard of a nearby location by Police Officer Jonathan Cutrone of the Nassau County Police Department. (Tr. Testimony of Police Officer Jonathan Cutrone ("Cutrone T."), ECF No. 7-4, at 410-11.) Upon approach, Officer Cutrone saw that Theodore was bleeding; Theodore told him that he had been shot by an unknown person. (Cutrone T. at 410.) Officer Cutrone called for an ambulance to respond and Theodore was taken to South Nassau County Hospital. (Cutrone T. at 411.) Theodore was

---

[2] Tristan Theodore's mother, Elizabeth Theodore, was home during the incident and stated that she heard the sound of a car start, went to her bedroom window, and saw her son's car driving away from the house. (E. Theodore T. at 371.) Moments later she heard a pop, then James arrived at the house, and 911 was called. (E. Theodore T. at 371.)

pronounced dead at the hospital, the cause of death determined to be the gunshot wound. (Tr. Testimony of Dr. Tamara Bloom ("Bloom T."), ECF No. 7-4, at 397-98.)

Detective Cereghino was assigned to the investigation and arrived at the scene at approximately 7:00 a.m. on June 15, 2010. (Tr. Testimony of Detective James Cereghino ("Cereghino T."), ECF No. 7-8, at 942.) Detective Cereghino canvassed the surrounding area, locating evidence, including duct tape. (Cereghino T. at 943.) Specifically, duct tape was recovered from inside Theodore's basement and in the vicinity of the location where Theodore was found. (Tr. Testimony of Detective Daniel Miller ("Miller T."), ECF No. 7-4, 7-5, at 420.) These items were packaged according to police protocol and sent for latent fingerprint and DNA testing. (Miller T. at 482.) In addition, a PlayStation game system and two bullet casings were recovered from inside Theodore's vehicle and officers observed a bullet exit hole in the rear driver's side door. (Miller T. at 420, 430-32.)

In addition, Detective Cereghino interviewed James, obtaining descriptions of the assailants, and obtained Theodore's stolen cell phone information to begin tracking the phone in hopes of locating the assailants. (Cereghino T. at 944.) Further canvasing was completed in search of video surveillance. (Cereghino T. at 945.) Officers collected surveillance footage from a nearby home video surveillance system, red light cameras, and a patrol unit's automatic license plate reader to help locate the relevant vehicles. (Cereghino T. at 947-52.) The video surveillance, coupled with eyewitness observations, led officers to identify Edward Williams as one of the two assailants. (Cereghino T. at 945-51.)

Ultimately, Theodore's cell phone was tracked to an apartment building in Brooklyn, New York; officers took photographs of individuals in the vicinity of this building to use in photographic arrays to assist in identifying the assailants. (Cereghino H. at 33.) One of the individuals photographed was petitioner. (Cereghino H. at 34.) Petitioner's photograph was incorporated into a photographic array; James identified petitioner in the photographic array as one of the two assailants. (Cereghino H. at 34-36.)

A trap-and-trace order was issued for petitioner's telephone number to assist in locating him. (Tr. Testimony of Detective Sergeant Devon Ross ("Ross T."), ECF No. 7-7, at 860.) Upon effectuating this trap-and-trace order, police were able to determine the current location of petitioner's phone based upon signals communicated from the phone to the nearby cell-phone towers and petitioner was apprehended on August 12, 2010. (Ross T. at 859-62.)[3]

On October 21, 2010, a lineup was administered to be viewed by James; James identified petitioner in this lineup. (Cereghino T. at 958-59; James T. at 543-44.) After petitioner's arrest, Detective Cereghino requested petitioner's fingerprints be compared to the evidence obtained related to the crime. (Cereghino T. at 959-60.) Following testing and comparison, it was determined that petitioner left a print from his right ring finger on the duct tape recovered from inside Theodore's basement and a print from his left middle finger on the duct tape recovered from the area where Theodore was

---

[3] Petitioner places emphasis on the fact that the "reasonable suspicion" standard required to obtain the trap-and-trace order was based on information given to Detective Cereghino from civilian witness Lillith James who stated that she overheard a conversation regarding the crime that petitioner took part in; Lillith James did not testify at trial. (*See* Pet. Aff. at 6-12.)

found. (Tr. Testimony of Detective John Laura ("Laura T."), ECF No. 7-6, at 684-700; Tr. Testimony of Detective Steven Koehler ("Koehler T."), ECF No. 7-7, at 915-21.)

From February 8 through February 16, 2011, a suppression hearing was held in Nassau County Supreme Court, during which members of the Nassau County Police Department testified regarding the identifications and arrest of petitioner. (H. at 15-164.) Following testimony and arguments from counsel, the hearing court found that there was probable cause to arrest petitioner and that the identification procedures shown to James were not unduly suggestive. (H. at 181-84.)

Petitioner was tried in Nassau County Supreme Court starting on September 6, 2011. (T. at 344.) At trial, the prosecution presented the testimony of twenty three witnesses, including the surviving victim, civilian witnesses, members of the police department, and expert witnesses involved in the investigation of the crime. (T. at 369-1025.) Following the presentation of the prosecution's evidence, defense counsel moved for a trial order of dismissal. (T. at 1027-29.) The trial court denied the motion and defense counsel did not call any additional witnesses. (T. at 1045.) Following summations from both defense counsel and the prosecution, the jury began deliberations. (T. at 1046-1126.)

On September 22, 2011, the jury finished deliberating and petitioner was convicted of three counts of murder in the second degree, three counts of robbery in the first degree, three counts of burglary in the first degree, one count of robbery in the second degree, one count of burglary in the second degree, one count of kidnapping in the first degree, one count of kidnapping in the second degree, and two counts of criminal possession of a weapon in the second degree. (T. at 1204-07.) Petitioner was acquitted of two counts of robbery in the first degree and one count of robbery in the second degree. (*Id.*)

On November 9, 2011, petitioner was sentenced to multiple concurrent terms of incarceration, the longest of which was twenty years to life. (S., ECF No. 7-10, at 12-13.)[4]

B. Procedural History

1. Direct Appeal

On August 27, 2013, petitioner appealed his conviction to the Second Department of the New York State Appellate Division. On direct appeal, petitioner argued that: (1) admission of certain statements made between petitioner and his co-defendant violated his rights; (2) the recordings of petitioner's prison phone calls were admitted in error; (3) the testimony regarding petitioner's arrest was prejudicial; (4) there was an insufficient basis to admit the fingerprint evidence; (5) electronic evidence obtained through the trap-and-trace order should have been suppressed; (6) his rights under the Confrontation Clause were violated regarding the autopsy testimony; (7) he received multiple instances of ineffective

---

[4] The specifics of the imposed sentence are as follows: (1) counts of murder in the second degree, 20 years of incarceration to life; (2) counts of robbery in the first degree and burglary in the first degree, 20 years of incarceration followed by 5 years of post-release supervision; (3) counts of robbery in the second degree and burglary in the second degree, 15 years of incarceration followed by 5 years of post-release supervision; (4) count of kidnapping in the first degree, 15 years of incarceration to life; (5) count of kidnapping in the second degree, 15 years of incarceration followed by 5 years of post-release supervision; (6) counts of criminal possession of a weapon in the second degree, 15 years of incarceration followed by 5 years of post-release supervision. (S. at 12.) All sentences run concurrently. (S. at 12-13.)

assistance of counsel; and (8) his sentence should be reduced. (*See* App. Div. Br., ECF No. 7-11, at 41-66.)[5]

On May 21, 2014, the Second Department affirmed the trial court's judgment of conviction and sentence. However, petitioner then filed a motion to reargue his appeal, which was granted, thus the court recalled and vacated the judgment. *See People v. Jackson*, 125 A.D.3d 1002 (2d Dep't. 2015). On reargument, petitioner asserted that his counsel was ineffective "due to his attorney's failure, *inter alia*, to move to set aside the verdict, to object to certain summation statements of the prosecutor, and to challenge the validity of a 'trap and trace order.'" *Id.* at 1004. On February 25, 2015, the Second Department re-affirmed the judgment. *Id.* at 1003. Pertinent to the order, the Second Department found that petitioner's Confrontation Clause argument was "unpreserved for appellate review . . . and . . . without merit." *Id.* at 1004. Further, the Second Department found that petitioner's ground for ineffective assistance of counsel was a "mixed claim" as it was "based, in part, on matter appearing on the record, and, in part, on matter outside the record." *Id.* at 1004. Accordingly, the Second Department determined that the appropriate remedy for such a claim should be a motion pursuant to New York Civil Procedure Law ("CPL") § 440.10 ("Section 440"). *Id.* at 1005.

Petitioner sought leave to appeal to the New York State Court of Appeals; leave to appeal was denied on July 2, 2015. *See People v. Jackson*, 25 N.Y.3d 1202 (2015).

2. Section 440 Motion

On July 2, 2016, petitioner filed a *pro se* motion in Supreme Court, Nassau County to vacate his judgment of conviction pursuant to C.P.L. § 440.10. (*See* Section 440 Mot., ECF No. 7-19.) In this motion, petitioner argued that his rights under the Confrontation Clause were violated as "[d]efense counsel failed to call or move the People to produce Lillith James to testify." (Section 440 Mot. at 20-22.) Petitioner raised several grounds of ineffective assistance of counsel, contending that counsel erred "by ignoring and failing to conduct adequate investigation before trial, failing to investigate certain evidence illegally obtained, and failing to challenge substantive errors in the prosecutor's case." (Section 440 Mot. at 5.) The ineffective assistance of counsel claims focus largely on the trap-and-trace order used to secure his apprehension. (Section 440 Mot. at 12-14.)

On May 2, 2017, the Supreme Court of Nassau County denied petitioner's Section 440 motion. (Court Order Denying Section 440 Mot., ECF No. 35-5.) The court determined that their "[r]eview of [petitioner's] moving papers indicated that his critical review of counsel, is replete with meritless claims. It is well settled that there can be no claim of ineffective assistance of counsel arising from the failure to make a motion or argument at trial that had little or no chance of success." (Court Order Denying Section 440 Mot. at 2.)

Petitioner sought leave to appeal to the Second Department; on October 25, 2017, the Second Department denied leave to appeal. (ECF No. 35-18.) Petitioner did not seek further leave to appeal to the New York State Court of Appeals.

---

[5] The Court uses the pagination assigned by the electronic case filing system when citing to the petitioner's Appellate Division brief. (ECF No. 7-11.)

5

### 3. The Instant Petition

On July 6, 2016, while the abovementioned Section 440 motion was still pending, petitioner moved before this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[6] Respondent filed a motion to dismiss the petition, arguing that all of petitioner's claims were unexhausted in state court. (*See* Resp.'s Mot. to Dismiss, ECF No. 7, at 14-17.)[7] On September 18, 2016, this Court granted petitioner a stay to adequately exhaust his pending state court proceedings. (*See* Court Order, ECF No. 10.)

Petitioner sent multiple letters informing the Court of the status of the state court proceedings. Then in a letter dated November 8, 2017, petitioner informed the Court of the final outcome of the state court proceedings, stating that he had exhausted his state court remedies. (*See* Pet. Letter, ECF No. 27.)

On May 25, 2018, respondent filed a reply in opposition to petitioner's motion for a writ of habeas corpus, including a discussion of the merits of petitioner's claims. (*See* Resp.'s Br., ECF No. 35.)

Subsequently, on June 18, 2018, petitioner submitted a reply in further support of his petition. (*See* Pet. Reply Br., ECF No. 36.) In addition, in a letter dated August 20, 2018, petitioner asks the Court to consider *Carpenter v. United States*, 138 S. Ct. 2206 (2018) in its consideration of the instant petition. (*See* Pet. Letter Reply, ECF No. 27.)

The Court has fully considered the parties' submissions, as well as the underlying record.

### II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable

---

[6] In the instant habeas petition, petitioner claims that his grounds for relief are that: (1) "[t]he County Court did not have [j]urisdiction of the [a]ction or the person of the movant pursuant to C.P.L. § 440.10(1)(a);" and (2) "[j]udgment was obtained in violation of a right to movant under the Constitution of this State or of the United States: Ineffective Assistance," but then instructs the Court that the support for the claims come from the attached affidavit. (Pet. at 5-6.) The Court notes that petitioner's affidavit in support is a copy of his Section 440.10 motion, which contains the above-referenced claims of ineffective assistance of counsel, Fourth Amendment violations, and Confrontation Clause related arguments. Therefore, as the Court is liberally construing the instant petition due to petitioner's *pro se* status, the Court will address the claims as they appear in his supporting affidavit.

[7] The Court uses the pagination assigned by the electronic case filing system when citing to respondent's motion to dismiss (ECF No. 7), respondent's reply brief (ECF No. 35), and petitioner's reply brief (ECF No. 36).

6

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*. at 413.

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required … the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id*. (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on the grounds that he received ineffective assistance of counsel, and that his rights under the Fourth Amendment and Confrontation Clause were violated. Respondent contends that petitioner's claims are entirely without merit. For the reasons set forth below, the Court finds that petitioner is not entitled to habeas relief and denies the instant petition on the merits.

A. Procedural Requirements

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n. 3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration

in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan,* 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye,* 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id*. at 192 (footnote omitted).

2.  Application

The Court first discusses the underlying state court proceedings, prior to addressing the merits of petitioner's claims.

First, as to petitioner's claims of ineffective assistance of counsel, he first argued ineffective assistance of counsel on direct appeal, specifically claiming that his attorney "failed to: 1) pursue suppression of the jailhouse statements . . . ; 2) challenge the testimony concerning [his] arrest; 3) challenge the authenticity of the fingerprint evidence; 4) sufficiently challenge the sole eyewitness testimony; 5) challenge the autopsy testimony; and 6) challenge the verdict sheet and verdict." (*See* App. Div. Br. at 60.) The Second Department determined that the ineffective assistance of counsel claims were made up of "matter appearing on the record, and, in part, on matter appearing outside the record," directing petitioner to pursue a Section 440 motion. *Jackson*, 125 A.D.3d at 1004-05. As discussed above, petitioner sought leave to appeal this decision to the Court of Appeals and it was denied.

Petitioner then raised all the ineffective assistance of counsel claims in the instant habeas petition in a Section 440 motion. The Supreme Court of Nassau County summarily denied the claims, stating that "[r]eview of [petitioner's] moving papers indicated that his critical review of counsel, is replete with meritless claims. It is well settled that there can be no claim of ineffective assistance of counsel arising from the failure to make a motion or argument at trial that had little or no chance of success." (Court Order Denying Section 440 Mot. at 2.) Petitioner sought leave to appeal this denial to the Second Department, which was denied. Accordingly, as the state court denied the ineffective assistance of counsel claims on the merits, it is entitled to the deferential standard of review articulated in AEDPA. *See* 28 U.S.C. § 2254(d); *see also Dolphy*, 552 F.3d at 238 ("When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by [AEDPA] . . . .").

Turning to petitioner's Fourth Amendment claims, he made Fourth

Amendment related arguments on direct appeal when he claimed that the admission of the electronic evidence obtained through the trap-and-trace order violated his rights. (*See* App. Div. Br. at 55-57.) The Second Department rejected all petitioner's claims, though it did not specifically discuss the merits of the Fourth Amendment related argument, stating only that the "remaining contentions are unpreserved for appellate review and, in any event, without merit." *Jackson*, 125 A.D.3d at 1005. Once petitioner's request for leave to appeal this denial was denied, petitioner then raised Fourth Amendment claims in his Section 440 motion, exactly as to those in the instant habeas petition. The Supreme Court of Nassau County denied petitioner's claims in their entirety without analyzing the substance of the Fourth Amendment claim. (*See* Court Order Denying Section 440 Mot. at 2.) However, this Court will proceed to address this claim's merits.

Finally, as to petitioner's contentions regarding the Confrontation Clause, petitioner raised related arguments on direct appeal, but based them on the fact that Dr. Bloom was called to testify at trial regarding the autopsy of the deceased victim though she witnessed the autopsy and did not personally perform it. (*See* App. Div. Br. at 58-59.) The Second Department denied this claim, finding it to be unpreserved for appellate review and without merit. *Jackson*, 125 A.D.3d at 1004. As discussed above, petitioner sought leave to appeal this decision to the highest state court, which was denied. Petitioner then raised Confrontation Clause arguments in his Section 440 motion, but based them on the fact that witness Lillith James did not testify, but whose information was included in the trap-and-trace order. This claim is raised identically in the instant habeas petition. As with the Fourth Amendment claim, the Nassau County Supreme Court summarily denied the claim without addressing the substance.

Accordingly, petitioner has properly exhausted the various claims raised in the instant petition, and the Court proceeds to address the merits of this claim.

### B. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel when his attorney failed to: (1) conduct an adequate investigation by not challenging probable cause; (2) challenge alleged hearsay; (3) attack the trap-and-trace order; (4) object to the fingerprint evidence; (5) call key witnesses to testify; (6) object to moments in the government's opening and closing arguments; and (7) object to jurisdictional issues surrounding his arrest. (*See* Pet. Aff. at 7-24.) The Court will first review the legal standard and then proceed to address the substance of these claims, finding them all to be meritless.

#### 1. Legal Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have

9

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The performance inquiry examines the reasonableness of trial counsel's actions under all the circumstances," keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (O'Connor, J., concurring)). "In assessing performance, [a court] must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

### 2. Failure to Challenge Probable Cause to Arrest

Petitioner claims that he received ineffective assistance of counsel because his attorney failed to conduct an adequate investigation by failing to attack the lack of probable cause for his arrest. (*See* Pet. Aff. at 12-13.) Respondent argues that petitioner's contention is based on a misunderstanding of the basis for his arrest, stating that "the state court properly determined that [petitioner's] attorney could not be faulted for failing to challenge the probable cause for his arrest . . . the suppression court [ ] properly decided that Brandon James' identification of [petitioner] in a photographic array furnished probable cause for his arrest." (Resp.'s Mot. to Dismiss at 17-18.) The Court agrees.

With respect to the first *Strickland* prong, petitioner has failed to show that counsel's performance fell below an objective standard of reasonableness, as he has failed to show that counsel committed an error. Of course, "[d]efense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Rosario v. Ercole*, 601 F.3d 118, 130 (2d Cir. 2010) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). However, though a petitioner "may not be pleased with the strategy employed by

his trial attorney, that alone is insufficient to establish his attorney's ineffectiveness." *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991).

In the instant matter, petitioner's contention that counsel failed to challenge the probable cause to arrest is contradicted by the underlying state court proceedings. In particular, a suppression hearing was held during which the probable cause to arrest was litigated and the identification procedures that led to petitioner's arrest were presented. Defense counsel challenged the probable cause by questioning the procedures surrounding the photographic array and lineup, arguing that the manner in which they were conducted was unduly suggestive. (H. at 174-79.) The hearing court found that there was sufficient evidence to support a finding of probable cause, stating that "[w]hen the victim identified the photo packs, certainly there, the probable cause standard was met." (H. at 18.)

Thus, petitioner cannot show that his counsel failed to challenge probable cause and petitioner has not shown that the hearing court's determination was erroneous. Any contentions regarding counsel's failure to challenge the trap-and-trace order as providing probable cause is a misunderstanding of the basis for petitioner's arrest. The trap-and-trace order was merely a tool to locate petitioner for apprehension, probable cause was based on the victim's identification of petitioner and additional evidence from the scene, all of which was addressed at the suppression hearing.

In sum, petitioner has not demonstrated any error by counsel on this ground and, thus, petitioner is unable to show that the state court's decision rejecting the ineffective assistance of counsel claim was contrary to, or an unreasonable application of, clearly established federal law.

### 3. Failure to Challenge Alleged Hearsay and the Trap-and-Trace Order

Construing the petition liberally, petitioner appears to argue that his counsel provided ineffective assistance of counsel for failing to raise an *Aguilar-Spinelli* claim regarding the fact that a trap-and-trace order was based upon uncorroborated hearsay statements from witness Lillith James. (Pet. Aff. at 12.) Petitioner states that the "Nassau County Police lacked reasonable suspicion to locate and arrest movant, where Lillith James made only cursory allegation[s] that [petitioner] had a Blackberry phone and that [petitioner] was involved in suspected crimes, Lillith James had no concrete or personal knowledge that a crime was committed by [petitioner], or whether he was involved in any [ ] way." (Pet. Aff. at 12.)

For context, "*Aguilar*, *Spinelli*, and their progeny focus on whether information provided by an anonymous informant is sufficiently reliable to support a warrant without other supporting information." *Greene v. Brown*, No. 06 Civ. 5532(LAP)(GWG), 2010 WL 1541429, at *1 (S.D.N.Y. Apr. 15, 2010); *see also Spinelli v. United States*, 393 U.S. 410 (1969); *Aguilar v. Texas*, 378 U.S. 108 (1964). In the instant matter, as argued by the respondent, the probable cause for petitioner's arrest was not provided by the referenced trap-and-trace order, but rather was provided by the surviving victim's identification of petitioner as one of the assailants. Accordingly, petitioner has not shown that failing to make such an argument was an error.

Even assuming *arguendo* that counsel was deficient for not raising an *Aguilar-Spinelli* argument in relation to the trap-and-trace order, petitioner still has not established the

11

prejudice prong of *Strickland*. "In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight of error' in order to determine whether the prejudice 'reach[es] the constitutional threshold.'" *Somerville v. Conway*, 281 F. Supp. 2d 515, 519 (E.D.N.Y. 2003) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001)). Given the overwhelming evidence of guilt, including physical evidence tying petitioner to the scene and the surviving victim's identification, petitioner has not demonstrated that without the results of the trap-and-trace order the outcome of the trial would have been different.

### 4. Failure to Challenge Fingerprint Evidence

Petitioner contends that he received ineffective assistance of counsel in relation to the fingerprint evidence when his attorney "failed to challenge the inconsistent practice of the crime lab, or the unexplained chain of custody" and "allowed a detective to testify" regarding the fingerprint analysis. (Pet. Aff. at 22-23.)

As a threshold matter, the underlying record shows that petitioner's attorney did challenge the veracity of the fingerprint analysis during the cross-examination of Detective John Laura during trial. (Laura T. at 701-21.)

In addition, even if petitioner disagrees with the manner in which defense counsel dealt with the fingerprint evidence, petitioner has not shown that counsel committed an error of constitutional magnitude. Generally, the choice of how to approach fingerprint evidence is a matter of trial strategy and "[c]ounsel's conduct is only considered unreasonable where there is no plausible trial strategy justifying counsel's behavior." *Lewis v. United States,* No. 10-CV-00718(ENV), 2012 WL 2394810, at *4 (E.D.N.Y. June 25, 2012) (citing *Jackson v. Leonardo*, 162 F.3d 81, 83 (2d Cir. 1998)). Furthermore, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *United States v. Best,* 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689).

Further, petitioner has not demonstrated that had counsel objected to any portion of the fingerprint analysis testimony he would have succeeded, in that the trial court would have suppressed the evidence or the outcome would be altered.

In sum, the Court finds no support to second-guess the decision of trial counsel and denies habeas relief on this ground. *See Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003) (emphasizing that a Court's scrutiny of trial counsel must be deferential as " 'it is all too tempting for a [petitioner] to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" (alteration omitted) (quoting *Strickland*, 466 U.S. at 689)).

### 5. Failure to Call Key Witnesses

Petitioner argues that counsel was constitutionally ineffective by "fail[ing] to call or move the People to produce Lillith James to testify as to all the facts and details." (Pet. Aff. at 12.)

It is well settled that "[c]ourts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury . . . 'The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.'" *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998));

*see also Eze*, 321 F.3d at 129 ("A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that we are reluctant to disturb.")

In the instant claim, petitioner is not arguing that Lillith James should have testified as she could exculpate petitioner in some way; rather, petitioner generally argues that Lillith James should have testified during trial. In addition, from an examination of the underlying proceedings, Lillith James' involvement in the matter is that she overheard a conversation regarding petitioner's involvement in the incident. Accordingly, petitioner has not shown that counsel was objectively unreasonable for not presenting Lillith James' testimony to the jury. Moreover, given that she was likely not a favorable witness for petitioner, he has not shown any possibility that, with her testimony, the result of the proceeding would have been altered.

### 6. Failure to Object to Government's Opening and Closing Arguments

Petitioner contends that he received ineffective assistance of counsel when his attorney failed to object to particular comments the prosecution made during their opening statement and summation. (Pet. Aff. at 21-23.) Regarding the prosecution's opening statement, petitioner argues that counsel should have objected when "the prosecutor [ ] state[d] to the jury that 'a trap and trace is a way of finding somebody by finding their phone.'" (Pet. Aff. at 21.) As to the summation, petitioner states that counsel should have objected to the suggestion that he fled the scene with his accomplice via the Long Island Railroad, as well as when the "prosecutor made claim to the jury [that], '[ ] as soon as he sees the cops, he's gone. It's a footrace." (Pet. Aff. at 22-23.)

With respect to the first *Strickland* prong,

petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. Even if these brief statements were objectionable, counsel is not necessarily ineffective for choosing not to object to these comments. *See Quinones v. Miller*, 224 Fed. App'x 44, 49 (2d Cir. 2007) (determining that counsel may have made "a strategic decision not to object, believing that an objection would only serve to highlight the statements to the jury."). Ultimately, there are strategic reasons counsel may "forgo objections: the conclusion that additional objections might have annoyed the judge or jury; the possibility that the prosecutor, given enough rope, would alienate the jury; the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences." *Taylor v. Fischer*, No. 05 Civ. 3034 (GEL), 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006). In addition, the Court notes that "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (internal quotation marks and citations omitted).

In any event, even assuming *arguendo* that petitioner was able to show that counsel's performance was deficient, petitioner has not demonstrated prejudice, as there is not a reasonable probability that the proceeding would have yielded a different outcome if counsel had objected during these instances. In the context of both the opening and summation, the prosecution's comments were peripheral to the government's case and were not a direct comment on the evidence presented at trial. Furthermore, given the overwhelming evidence of petitioner's guilt, as discussed *supra*, petitioner has not shown that these few comments amounted to prejudice that can satisfy the second prong of *Strickland*. Accordingly, petitioner cannot obtain habeas relief on this ground of ineffective assistance of counsel.

### 7. Failure to Challenge that Police Department Acted Outside their Jurisdiction

Petitioner alleges that counsel was ineffective by failing to challenge that the "Nassau County Police violated the statutory limits of their jurisdiction" by effectuating his arrest outside of Nassau County, New York. (Pet. Aff. at 16.) In opposition, respondent cites to New York Criminal Procedure Law § 140.10(3), which states: "A police officer may arrest a person for a crime . . . whether or not such crime was committed within the geographical area of such police officer's employment, and he or she may make such arrest within the state, regardless of the situs of the commission of the crime." N.Y. C.P.L. § 140.10(3).

Petitioner has failed to show that his counsel was ineffective in failing to raise this argument because, as respondent notes, it is clear, pursuant to New York Criminal Procedure Law § 140.10(3), that his "arrest was valid even though it did not take place in the jurisdiction where the arresting officers were employed." *People v. Bethune*, 65 A.D.3d 749, 750-51 (3d Dep't 2009) (citing N.Y. C.P.L. § 140.10(3)). Accordingly, petitioner cannot show ineffective assistance of counsel on this ground.

### C. Fourth Amendment Claim

Petitioner alleges that he is entitled to habeas relief as he "was subjected to an illegal, warrantless arrest that violated his Fourth Amendment right to be free from unreasonable searches and seizures," arguing that the trap-and-trace order did not provide the requisite probable cause. (Pet. Aff. at 12, 19.) The Court will first discuss the applicable legal standard and then address the merits of petitioner's Fourth Amendment related arguments.

#### 1. Legal Standard

It is well-settled that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Second Circuit has further explained that, under *Powell*:

> "review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). Courts have described such a breakdown as occurring when the state court "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." *Id.* at 71 (internal quotation marks and citations omitted).

#### 2. Merits

As to the first prong of the Fourth Amendment analysis, New York has adequate corrective procedures for litigating Fourth Amendment claims, which are set forth in C.P.L. § 710.10 *et seq*. *See, e.g.*, *Capellan*, 975 F.2d at 70 n.1 ("[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'" (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1998))); *McPhail v. Warden, Attica Corr. Facility*, 707

14

F.2d 67, 69 (2d Cir. 1983) (New York's procedure for litigating a Fourth Amendment claim in a criminal trial complied with requirement that state provide an opportunity to litigate such claims).

Accordingly, petitioner must show that an "unconscionable breakdown" occurred in New York State's statutory mechanism for reviewing Fourth Amendment claims. In *Cappellan*, the Second Circuit gave examples of "the sort of disruption or obstruction of a state proceeding typifying an unconscionable breakdown." 975 F.2d at 70 (internal quotation marks and citations omitted). The Second Circuit guided that an unconscionable breakdown might occur if the trial court "yielded to mob intimidation of the jury" or if "the process furnished was 'claimed to be meaningless [because] the totality of state procedures allegedly did not provide rational conditions for inquiring into federal-law . . . questions.'" *Id.* (quoting Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus Review for State Prisoners*, 76 Harv. L. Rev. 441, 456-57 (1963)).

Considering the underlying proceedings, there is no evidence of "'disruption or obstruction of [the] state proceeding' typifying an unconscionable breakdown." *Cappellan,* 975 F.2d at 70 (quoting *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)). Having fully availed himself of New York's corrective proceedings via a pre-trial evidentiary hearing, petitioner has had an opportunity for full and fair litigation of his Fourth Amendment claims, and he therefore may not raise it on federal habeas review.

In addition, petitioner's Fourth Amendment contentions rest on a mischaracterization of the bases for his arrest. As stated by the state court, the probable cause for petitioner's arrest was supplied by the photo identification of petitioner by the surviving victim and the petitioner has provided no justification for the Court to supplant the state court's determination that sufficient probable cause existed. *See Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) ("[A]bsent circumstances that raise doubts as to the victim's veracity,' a victim's identification is typically sufficient to provide probable cause.") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *Carson v. Lewis*, 35 F. Supp. 2d 250, 260 (E.D.N.Y. 1999) ("[U]nequivocal identification of a suspect received by police from a victim or eyewitness can provide probable cause.").

The Court notes that it has reviewed the letter dated August 20, 2018, in which petitioner asks the Court to consider the Supreme Court's decision in *Carpenter v. United States*, 130 S. Ct. 2206 (2018), and find that his trap-and-trace order constituted a Fourth Amendment violation. (Pet. Letter at 1.) In *Carpenter*, the Supreme Court was faced with the "question whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." *Carpenter,* 130 S. Ct. at 2211. In the case of *Carpenter*, cell-site records were obtained over 127 days of Carpenter's movements and the records were obtained through an order pursuant to the Stored Communications Act, which required a showing by the government of "reasonable grounds" for believing that the records were "relevant and material to an ongoing investigation." 18 U.S.C. § 2703(d), which is a standard lower than probable cause. *Carpenter*, at 2217, 2221. Ultimately, the Court acknowledged that the information obtained through cell-site records "does not fit neatly under existing precedents," but determined that it was a search demanding Fourth Amendment protections and determined that orders such as Carpenter's should be based on a finding of probable cause, not the lower standard utilized under

Section 2703(d). *Id.* at 2210-2211.

Petitioner acknowledges the differences in his scenario from that in *Carpenter*, noting that the cell-site records in *Carpenter* were used "to locate the defendant's physical movements during the course of a crime . . . [w]hereas, here, police officials obtained [c]ell-site [l]ocation [i]nformation in [real time] to locate the [p]etitioner's physical movements [live] to a specific location to arrest the petitioner without a search warrant." (Pet. Letter at 2.) In addition, the Court notes that petitioner's trap-and-trace order was issued in 2010, before the Supreme Court had issued its *Carpenter* decision. Petitioner has not alleged that law enforcement acted in an objectively unreasonable manner in relying on the order obtained to locate petitioner for arrest. *See United States v. Guillen*, No. 17-CR-512 (KMW), 2018 WL 5831318, at *15 (S.D.N.Y. Nov. 7, 2018) (finding that before *Carpenter* the issuance of a cell-site order on only reasonable cause was "in compliance with a federal statute which was not clearly unconstitutional at the time [and] it was reasonable for law enforcement officers to rely on the order.") (internal quotation marks and citations omitted). In any event, as the respondent correctly notes, even if the information garnered by the trap-and-trace order was suppressed, which was "the location data for defendant's telephone," petitioner is unable to show the importance of this information to his defense or that it would "have meaningfully aided [him] at his trial." (Resp.'s Br. at 19.) Accordingly, the Court finds that petitioner has not demonstrated that he is entitled to habeas relief on his Fourth Amendment claim.

### D. Confrontation Clause Claim

Construing the petition liberally, it appears that petitioner is claiming that his rights under the Confrontation Clause were violated when counsel failed to "test the reliability or accuracy of the statements, out of Court, attributed to Lillith James by Detective Cereghino to initiate an investigation." (Pet. Reply at 7.) For the reasons set forth below, this claim does not provide a basis for habeas corpus relief.

1. Legal Standard

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) (internal citations omitted). Thus, the Confrontation Clause prohibits the prosecution from introducing testimonial hearsay—*i.e.*, "testimonial" statements by a non-testifying declarant that are admitted for the truth of the matter asserted—unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-57 (2004); *see also Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822.

If this Court finds that the trial court violated the Confrontation Clause by admitting testimonial statements without allowing petitioner the opportunity to submit the declarant to cross-examination, the Court must then determine whether the admission of such a statement amounts to "harmless error." *McBee v. Burge*, 644 F. Supp. 2d 270, 283 (E.D.N.Y. July 24, 2009). When engaging in

this analysis, the Court notes that "[t]he strength of the prosecution's case is probably the single most critical factor in determining whether error was harmless." *United States v. Castano*, 999 F.3d 615, 618 (2d Cir. 1993).

### 2. Merits

"Confrontation Clause claims generally fall into broad, albeit not exclusive, categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Coito v. Herbert*, 331 F.3d 217, 229 (2d Cir. 2003) (internal quotation marks and citations omitted).

Petitioner's claim does not fall into a framework fitting the Confrontation Clause. First, petitioner's counsel's ability to cross-examine Lillith James was not stifled by the trial court, as she did not testify at trial. Second, Lillith James' out-of-court statements were not admitted during trial and, thus, were never before the jury. In addition, it appears that the information Lillith James possessed was unfavorable to petitioner and the Court is not convinced that petitioner's rights were violated when defense counsel did not have the opportunity to facilitate the presentation of this testimony to the jury. Accordingly, this claim is without merit and does not provided a basis for habeas relief.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254 and exercises its discretion and finds that an evidentiary hearing is unnecessary to resolve petitioner's meritless claims. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purposes of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: January 4, 2019
Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*, P.O. Box 116, Fallsburg, NY 12733. Respondent is represented by Cristin N. Connell, Assistant District Attorney, Nassau County District Attorney's Office, Two Hundred Sixty Two Old Country Road, Mineola, NY 11501.